Filed 1/25/24  FEI Enterprises v. Massachusetts Bay Ins. Co. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FEI ENTERPRISES, INC. et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>MASSACHUSETTS BAY INSURANCE COMPANY,<br><br>    Defendant and Respondent. | B323740<br><br>(Los Angeles County Super. Ct. No. 19STCV03238) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura A. Seigle and Thomas D. Long, Judges. Affirmed.

Law Office of Robert G. Klein and Robert G. Klein for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Rebecca R. Weinreich, Jordon E. Harriman, Jeffry A. Miller and Brittany B. Sutton for Defendant and Respondent.

\* \* \* \* \* \*

A school district sued an electrical contractor over the contractor's shoddy work on the construction of a middle school. After the contractor settled with the district for $1.35 million, the contractor sued the surety that had issued it a performance bond covering the work, alleging that the surety had breached its contractual obligations to the contractor in refusing to loan the contractor $150,000 as part of a $400,000 settlement offer the contractor wanted to make to the district in an earlier stage of the district's lawsuit. The trial court granted summary judgment for the surety because the undisputed facts showed that the district never would have accepted a $400,000 offer, such that the surety's refusal to make a loan did not cause the contractor any damages. Because we independently agree with that ruling, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *FEI completes electrical work for a school district*

In July 2010, Torrance Unified School District (the District) solicited bids from contractors for the construction of a new middle school (the project). FEI Enterprises, Inc. (FEI) won the bid on a package of "Electrical, Low Voltage, Audio Visual" work

2

for the project, for a total contract price of $2,298,000. FEI's president is Gabriel Fedida (Gabriel) and Gabriel's son, Tomer Fedida (Tomer), is an attorney who assists in representing FEI.[1]

As required for all public works projects, FEI was required to post a performance bond guaranteeing its performance of the contract. (Pub. Contract Code, § 10224.) Massachusetts Bay Insurance Company (the surety)[2] issued a $2,298,000 bond in favor of the District. In exchange, FEI (1) paid the surety a premium and (2) executed an indemnity agreement in the surety's favor. As pertinent here, the indemnity agreement vested the surety with the "sole discretion[]" to make "advances or loans" on the bond as well as the "absolute right" to cease making any advances or loans "at any time and without notice to" FEI.

The project was completed in July 2012.

B.    ***The District sues FEI and the surety over FEI's work on the project***

In August 2015, the District sued FEI and the surety, asserting claims for breach of contract, breach of warranty, and enforcement of the performance bond (the District action). The District alleged that FEI provided labor, equipment, materials, and supplies that were "defective," that FEI's electrical work was not completed in a "workmanlike manner" or "in accordance with" the contract for the project, and that FEI "concealed its

---

1    Because the father and son share the same surname, we use their first names to avoid confusion; we mean no disrespect.

2    Massachusetts Bay is a subsidiary of The Hanover Insurance Company (Hanover). FEI subsequently sued Hanover as part of the underlying lawsuit in this case, but the trial court dismissed Hanover, so it is not a party to this appeal.

3

defective work" so it was not apparent during inspections. Although the District in its complaint alleged damages totaling approximately $2 million, the District subsequently released a more detailed assessment of damages that totaled $3,033,635.42; of that amount, $534,721.16 was for FEI's alleged failure to address electrical issues with respect to a methane containment system beneath the project site.

After the District filed suit, the surety demanded that FEI post collateral for the full amount of the $2,298,000 performance bond. When FEI refused, the surety sued FEI in federal court. That lawsuit quickly settled, pursuant to which FEI executed a collateral security agreement with (1) Gabriel granting the surety a deed of trust in property he owned, and (2) FEI promising to repay the surety any amount the surety expended to resolve the District action in either a "lump sum" or in monthly payments of at least $10,000 per month.

C.    *FEI negotiates and settles the District action*

In November 2016, FEI, the surety, and the District participated in a mediation. During that mediation, the District's lowest demand to resolve the action was $500,000, and FEI never made a $400,000 offer during the mediation.

In January 2017, FEI made a $300,000 settlement offer to the District.

Just a few days later, and while the $300,000 settlement offer was still pending, Tomer orally informed the District that he was trying to put together a $400,000 settlement offer, which Tomer hoped to finance with $250,000 from FEI's liability insurer and $150,000 from the surety. The District's attorney "urged" Tomer to make that $400,000 offer, and orally told Tomer that he would "recommend" that the District accept any such offer.

4

However, the District's attorney lacked the authority to accept a $400,000 offer without further consultation with the District, and the District would never have settled for $400,000 because its damages "far exceeded" that amount. Because the surety refused to loan FEI the $150,000, FEI never made a formal $400,000 offer in January 2017.

The District subsequently rejected FEI's still-outstanding $300,000 offer.

In early March 2017, FEI made a $400,000 settlement offer using funding from other sources. The District rejected that offer. In its email doing so, the District pointed out that its "lowest number" at "the mediation" had been $500,000, and that since the November 2016 mediation, the District "ha[d] incurred significant costs." The District made a counteroffer of $650,000.

Nearly two years later, in December 2018, the District action settled for $1.35 million, with FEI contributing $300,000; FEI's liability insurer contributing $400,000; and the surety contributing $650,000.

## II. Procedural Background

### A. *The early complaints and first summary judgment motion*

Six weeks after settling the District action, FEI, Gabriel (individually, and as trustee of two trusts), and his wife[3] sued the surety for breach of the covenant of good faith and fair dealing,

---

[3] For sake of simplicity, we hereafter refer to FEI, Gabriel, and his wife collectively as FEI.

breach of contract, and promissory fraud.[4]  Specifically, FEI alleged that the surety breached the covenant by refusing to loan FEI $150,000 back in January 2017.  FEI alleged that this breach caused it damages because, if the surety had loaned FEI $150,000, then (1) FEI could have made a $400,000 settlement offer in January 2017, (2) the District action would have settled for $400,000 instead of $1.35 million, and (3) FEI would not have suffered an additional $950,000 in damages.

By June 2021, the operative complaint was the third amended complaint, and the surety moved for summary judgment on that complaint.  Specifically, the surety argued that FEI's sole claim against it in that complaint for breach of the covenant of good faith and fair dealing failed as a matter of law because the surety had the "sole" discretion under the indemnity agreement whether to loan FEI any money, such that it could not act in bad faith for refusing to do so during negotiations of the District action.  At no point in its motion did the surety argue that its failure to loan FEI $150,000 was not the source of FEI's damages; to the contrary, the motion at one point explicitly *assumed* the surety was responsible, but argued that it still could not be liable.

After further briefing and a hearing, the trial court denied the surety's motion.  The court reasoned that the surety failed "to

---

[4]     FEI also sued the attorney and law firm who represented it during the negotiations with the District, but settled with those parties for an undisclosed amount.

FEI's lawsuit spawned a cross-complaint by the surety for FEI's alleged breach of the collateral security agreement for making insufficient monthly payments.  The surety dismissed this cross-complaint after prevailing on summary judgment on FEI's operative complaint.

address the correct law" establishing that it must exercise its discretion in good faith and did "not satisfy its initial burden" of showing that FEI cannot establish a lack of good faith. The court went on to note that there were disputes of fact over whether the District action could have settled for $400,000.

**B.** ***The fourth amended complaint and second summary judgment motion***

In response to a comment by the trial court in its summary judgment ruling that FEI could not rely on unpled facts regarding the surety's prior conduct of loaning FEI money for settlement offers on an unrelated project to establish its expectations regarding the surety's exercise of discretion, FEI filed the operative fourth amended complaint in November 2021 that added a cause of action for breach of implied-in-fact contract. As to this new claim and the prior claim for breach of the covenant of good faith and fair dealing, FEI alleged that, if the surety had loaned it $150,000 in January 2017, (1) FEI could have made a $400,000 settlement offer to the District in January 2017, (2) the District "would have accepted the $400,000 settlement offer," and (3) FEI would not have had to settle for the higher amount of $1.35 million.

The surety filed a second summary judgment motion, but this motion was based solely on FEI's inability to establish damages. After further briefing and two hearings,[5] the trial

---

[5] FEI argued at the first hearing that it had additional facts to allege regarding another instance in which the surety refused to contribute to a settlement offer. The trial court continued its ruling on the summary judgment motion so FEI could file a motion for leave to file a fifth amended complaint. When the court ruled that it would only be allowing FEI to add five

court granted the surety's motion.  The court ruled that the surety had met its initial burden of showing the absence of any causal link between its failure to loan FEI $150,000 in January 2017 and FEI's alleged damages because the evidence showed that, even if the surety *had* made that loan and thereby enabled FEI to make the $400,000 settlement offer in January 2017, the District would have rejected that offer.  The court also ruled that FEI had not raised a disputed issue of material fact on this issue because the evidence FEI cited "[a]t most . . . establish[ed] that [the District's attorney] would have recommended [that the District accept] the $400,000 offer [at that time]," "[b]ut FEI did not show disputed facts concerning whether the District would have accepted a $400,000 offer at any time."

### C.   *Appeal*

Following entry of judgment for the surety, FEI timely filed this appeal.

### DISCUSSION

FEI argues that the trial court erred in granting summary judgment to the surety.

Summary judgment is appropriately granted "where 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286, quoting Code Civ. Proc., § 437c, subd. (c).)  "Summary judgment is appropriate, and the moving party (typically, the defendant) is entitled to judgment as a matter of law, where (1) the defendant carries its initial burden of showing either the nonexistence of one or more

_____

paragraphs of its new allegations, FEI abandoned the proposed amended complaint.

8

elements of the plaintiff's claim or the existence of an affirmative defense, and (2) the plaintiff thereafter fails to show the 'existence of a triable issue of material fact' as to those elements or affirmative defense." (*Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 767; *Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 500; Code Civ. Proc., § 437c, subds. (a), (c), (o)(1) & (2), (p)(2).) "'"'We review the trial court's decision [granting summary judgment] de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'" [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.'" (*Hartford Casualty*, at p. 286.)

The elements of FEI's claims for breach of the implied covenant of good faith and fair dealing and breach of an implied-in-fact contract are largely identical; both claims require FEI to prove damages proximately caused by the breach. (*Bennett v. Ohio National Life Assurance Corp.* (2023) 92 Cal.App.5th 723, 729 [noting "damages element" of claim for "breach of the implied covenant"]; *Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1230 [noting elements of claim for breach of implied-in-fact contract are the same as the element of claim for breach of express contract]; *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 [breach of express contract requires proof of damages resulting from breach].)

Applying these general principles, the surety is entitled to summary judgment if there is no dispute of material fact as to whether the surety's refusal to loan FEI $150,000 in January 2017 caused FEI any damages.

9

## I. Analysis

In general, a plaintiff can recover for breach of contract only if its damages are "clearly ascertainable in both their nature and their origin." (Civ. Code, § 3301; *Copenbarger v. Morris Cerullo World Evangelism, Inc.* (2018) 29 Cal.App.5th 1, 11.) Damages are "clearly ascertainable" from a breach only if the plaintiff "show[s] . . . that [it] has suffered damages by reason of the wrongful act of defendant" to a "legal certainty." (*Stott v. Johnston* (1951) 36 Cal.2d 864, 875 [connection between breach and damages must be established "with reasonable certainty"]; *Agnew v. Parks* (1959) 172 Cal.App.2d 756, 768; *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 165-166 (*Filbin*); *Marshak v. Ballesteros* (1999) 72 Cal.App.4th 1514, 1518 (*Marshak*); *Thompson v. Halvonik* (1995) 36 Cal.App.4th 657, 663; *Sukoff v. Lemkin* (1988) 202 Cal.App.3d 740, 746-747.) Where, as here, a plaintiff's damages turn on a comparison of what *did happen after an alleged breach* (here, FEI settled for $1.35 million) to what *might have happened in the absence of the alleged breach* (here, FEI could have settled for $400,000), damages are established to a "legal certainty" only if the plaintiff shows that "it is more likely than not" that the second, "better outcome" *would have* happened. (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1244 (*Viner*); *Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1582 [plaintiff must show it "'would *certainly* have" received better outcome].) It is not enough to show that the better outcome *could have* happened; time and again, courts have rejected the position that the """possibility"" or """mere probability""" of the better outcome is sufficient. (*Marshak,* at pp. 1518-1519; *Barnard v. Langer* (2003) 109 Cal.App.4th 1453, 1461-1462; *McGregor v. Wright* (1931) 117 Cal.App. 186, 197.)

We independently agree with the trial court that there is no triable issue of material fact as to whether the surety's failure to loan FEI $150,000 in January 2017 caused FEI's alleged damages. That is because the undisputed facts show that, even if the surety *had* made that loan and FEI had made a $400,000 settlement offer to the District in January 2017, it is *not* "more likely than not" that the District would have accepted that offer. It is undisputed that the District's initial settlement demand *two months earlier* (during the November 2016 mediation) had been for $500,000, and its costs had only increased since *that point in time*. It is undisputed that the District rejected the $400,000 settlement offer FEI made in March 2017, and that the District countered with a demand for $650,000. And it is undisputed that the District's decision maker—the only one with the authority to accept or reject settlement offers—unequivocally stated that the District would *never* have accepted a $400,000 settlement offer given the damages it sustained as a result of FEI's substandard work. To be sure, FEI introduced evidence that the District's *attorney* said in January 2017 that he would "recommend" that the District accept a potential $400,000 offer from FEI. But it is undisputed that the attorney himself did not have the authority to accept such an offer, and, as noted above, the District's decision maker stated he would *not* have accepted such an offer (and hence would have rejected his attorney's recommendation). Thus, this proffered evidence does not even create a *possibility* of a $400,000 settlement in January 2017—let alone create a disputed issue of fact as to whether the District would have more likely than not entered into a settlement for that amount at that time.

Although causation is typically a question of fact for the jury, it may be decided as a matter of law on summary judgment where, as here, "the evidence is not in dispute" or "permits of only one conclusion." (*Filbin*, *supra*, 211 Cal.App.4th at p. 172.)  So it is here.

## II.    FEI's Counter-Arguments

FEI resists our analysis with five arguments.

First, FEI argues that the surety's second summary judgment motion was procedurally improper because "[a] party shall not move for summary judgment based on issues *asserted* in a prior motion for summary adjudication and denied by the court" unless the second motion rests on "newly discovered facts or circumstances or a change of law."  (Code Civ. Proc., § 437c, subd. (f)(2), italics added.)  We reject this argument for two reasons.  To begin, this statutory bar on successive motions for summary adjudication or judgment explicitly turns on what the movant *asserted* in its prior motion.  In its first motion, the surety's asserted ground for summary judgment was that its refusal to loan FEI $150,000 could not have breached the indemnity agreement because that agreement vested the surety with "sole discretion" whether to loan money to FEI; this was an argument about duty and breach, not causation and damages.  Although the trial court made findings about whether there were disputed issues of fact as to causation and damages, we do not read the surety's motion as presenting the issue of the causal link between breach and damages; the trial court's sua sponte ruling does not retroactively mean that the surety asserted something in its first motion that the motion did not, in actuality, assert.  Further, this procedural objection is, in any event, irrelevant because the trial court retained the power to revisit its prior ruling on the issue of

12

causation and damages. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1105, 1109.)

Second, FEI argues that we are applying the wrong legal test because, in its view, "[t]his case is not about whether [FEI] can establish damages by showing [that the District] 'would have' accepted a $400,000 settlement." As explained above, that is *precisely* what this case is about. FEI's view is simply wrong on the law.

Third, FEI asserts that we should, as a matter of public policy, relieve FEI of the burden of having to prove that the surety's breach caused damages. Instead, FEI continues, the surety should bear the burden of proving the *absence* of a causal link because (1) courts sometimes shift the burden of proof when a party engages in wrongdoing that makes it "practically impossible for the plaintiff to prove its case" (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1226 (*Williams*)); and (2) the surety engaged in wrongdoing by not loaning FEI $150,000, and it is more "difficult" to prove causation in a case like this one where causation turns on an examination of what was and what might have been.

Admittedly, the legal premise of FEI's argument is valid: Courts do have the inherent power to shift the burden of persuasion as to a particular fact for public policy reasons, typically when "'the defendant's wrongdoing makes it practically impossible for the plaintiff to prove the wrongdoing,'" and the decision whether to shift the burden turns on a balancing of (1) "'"the knowledge of the parties concerning the particular fact, [(2)] the availability of the evidence to the parties, [(3)] the most desirable result in terms of public policy in the absence of proof of the particular fact, and [(4)] the probability of the existence or

13

nonexistence of the fact.""" (*Williams*, *supra*, 167 Cal.App.4th at p. 1226; *Galanek v. Wismar* (1999) 68 Cal.App.4th 1417, 1426 (*Galanek*); *National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.* (2003) 107 Cal.App.4th 1336, 1346 (*National Council*); *Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1087-1090.)

We nevertheless decline to shift the burden of proof as to causation in this case for two reasons.

For starters, and as noted above, this doctrine has been limited to instances in which a party has destroyed or limited *access to evidence.* Here, the surety has not blocked any access to evidence; FEI is just as free as the surety to obtain discovery from the District or other third parties about what might have happened if FEI had made a $400,000 settlement offer in January 2017. What makes causation more difficult here is not any conduct by the surety blocking access to evidence; it is simply the fact that it is inherently more difficult to prove causation where causation turns on a comparison between the outcome that *did happen* and outcomes that *did not happen.* Also, courts have shifted the burden only when the party has engaged in "wrongdoing" separate and apart from the "wrongdoing" alleged in the underlying litigation, such as when a party destroys or otherwise limits access to evidence during discovery. (*Williams*, *supra*, 167 Cal.App.4th at pp. 1225-1228 [discovery misconduct]; *Galanek*, *supra*, 68 Cal.App.4th at p. 1426 [spoliation]; *National Council*, *supra*, 107 Cal.App.4th at p. 1346 [collecting cases regarding spoliation]; cf. *National Council*, at pp. 1346-1347 [noting application in negligence per se and design defect cases].) The sole wrongdoing FEI uses as the justification for shifting the burden of proof is the surety's conduct in not loaning it $150,000,

14

which is exactly the same conduct FEI alleges as the breach underlying its lawsuit. This is not an adequate basis for shifting the burden of proof. (*National Council*, at p. 1347 ["We are aware of no cases in which the burden of proof shifts to the defendant upon the filing of the complaint"].) Indeed, our Supreme Court has held that the plaintiff retains the burden of proving causation in "settle and sue" cases where causation turns on the very same comparison of outcomes that did and did not happen. (*Viner*, *supra*, 30 Cal.4th at p. 1244.)

Additionally, and more fundamentally, the net effect of FEI's argument would be to eliminate the causation element from FEI's claims. As the party moving for summary judgment, the surety *already* bore the burden of producing evidence, and it carried that burden by showing the District would not have accepted a $400,000 settlement offer had one been made in January 2017. FEI did not introduce substantial evidence to rebut that showing. If all we did was shift the burden of persuasion, the surety would still prevail on this record. Thus, what FEI is *really* requesting is that we relieve it of the burden of even having to rebut the surety's showing—in other words, that we excuse FEI from having to make any showing *at all* regarding causation. This we decline to do, because we would be effectively treating evidence satisfying the element of breach as *also* satisfying the element of causation, thereby eliminating the element of causation entirely. (See, e.g., *People v. Jeffers* (1987) 43 Cal.3d 984, 991-992 [declining to render element superfluous].)

Fourth, FEI at oral argument asserted that it had "no liability" *at all* to the District, such that the District surely would have accepted a $400,000 settlement offer from FEI in January

15

2017. We reject this argument because it contradicts the undisputed evidence that the District's lowest settlement offer at any point in time in that case was $500,000. FEI's assessment in *this* litigation that the District's claims had no value is obviously different from the District's view, and it is the District's view that matters as to whether the District would have accepted a $400,000 offer from FEI in January 2017. Indeed, the ultimate settlement of the District action for $1.35 million tends to undermine entirely FEI's current assessment that the District litigation had no value.

Fifth and lastly, FEI argues that there are triable issues of fact as to whether the surety breached its duty to make loans. Given that FEI already prevailed on this issue in the first summary judgment motion and that it was not at issue in the second summary judgment motion, this argument is irrelevant to the motion we are reviewing in this appeal.

## DISPOSITION

The judgment is affirmed.  The surety is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST